UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                          :
UNITED STATES OF AMERICA,                                 :
                                                          :          23-CR-396 (JMF)
            -v-                                           :
                                                          :
JOSEPH MALVASIO, et al.,                                  :          OPINION AND ORDER
                                                          :
                        Defendants.                       :
                                                          :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Joseph Malvasio, Gregg Marcus, and Christopher Polk are charged with wire fraud and

conspiracy to do the same in connection with an alleged scheme to defraud borrowers seeking

loans. *See* ECF No. 70 ("Indictment"), ¶¶ 2-4. In advance of trial, which is scheduled to begin

on June 8, 2026, the Government has filed a motion to exclude or otherwise limit the testimony

of two of Malvasio's proposed expert witnesses, Steven S. Albert and Scott W. Carnahan, and

the testimony of Marcus's sole proposed expert witness, Paul Dopp. *See* ECF No. 187 ("Gov't

Mem."). Alternatively, it seeks a *Daubert* hearing to examine the qualifications of these experts.

*Id.* at 22. For the reasons that follow, the Government's motion is GRANTED in part and

DENIED in part. Additionally, Malvasio, Marcus, *and* the Government are ORDERED to

supplement their expert disclosures.

## LEGAL STANDARDS

Rule 16 of the Federal Rules of Criminal Procedure governs disclosure of expert

witnesses in criminal cases. As relevant here, Rule 16(b)(1)(C) was recently amended to require

that defendants provide "a complete statement of all opinions that the defendant will elicit from

the witness in the defendant's case-in-chief" *and* "the bases and reasons for them." FED. R.

CRIM. P. 16(b)(1)(C)(iii). The purpose of the amendment was to address "shortcomings of the

prior provisions on expert witness disclosure," including "the lack of adequate specificity regarding what information must be disclosed." FED. R. CRIM. P. 16, Advisory Committee's Note to 2022 Amendment.  The more generous disclosure requirement "is intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.*  But even before amendment of the Rule, "[m]erely identifying the general topics about which the expert will testify [was] insufficient; rather, the summary [had to] reveal the expert's actual opinions." *United States v. Kaufman*, No. 19-CR-504 (LAK), 2021 WL 4084523, at \*19 (S.D.N.Y. Sept. 8, 2021) (internal quotation marks omitted).  When faced with insufficient disclosures, a court "has broad discretion to determine what remedial action, if any, is appropriate." *United States v. Ho Wan Kwok*, No. 23-CR-118 (AT), 2024 WL 1773143, at \*1 (S.D.N.Y. Apr. 24, 2024) (internal quotation marks omitted).  Among other remedial options, a court "may exclude the expert's testimony at trial" or "require parties to supplement their Rule 16 disclosures." *Id.* at \*3 (internal quotation marks omitted).

The admissibility of expert testimony at trial is governed by Rule 702 of the Federal Rules of Evidence, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his or her opinion "if the proponent demonstrates to the court that it is more likely than not that":

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the

Supreme Court emphasized the "gatekeeping role" of district courts with respect to expert

testimony, declaring that "the Rules of Evidence — especially Rule 702 — . . . assign to the trial

judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is

relevant to the task at hand."  *Id.* at 597; *see also Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291,

302 (S.D.N.Y. 2001) ("[The] proffered testimony . . . must not only have a reliable foundation

but also be relevant in that it 'fits' the facts of this case." (citing *Daubert*, 509 U.S. at 591-92)).

"The Rule 702 inquiry is a flexible one that depends upon the particular circumstances of the

particular case at issue."  *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF),

2016 WL 4077117, at *2 (S.D.N.Y. Aug. 1, 2016) (internal quotation marks omitted); *see also*

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-52 (1999) (explaining that because "there are

many different kinds of experts, and many different kinds of expertise," a court must be granted

"considerable leeway in deciding in a particular case how to go about determining whether

particular expert testimony is reliable").

The focus of the Court's analysis "must be solely on principles and methodology, not on

the conclusions that they generate."  *Daubert*, 509 U.S. at 595.  Ultimately, "expert testimony

should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so

unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges

comparison."  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (cleaned up).

The Court should not "admit opinion evidence that is connected to existing data only by the ipse

dixit of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Nor should an expert be

permitted to "supplant the role of counsel in making argument at trial," *In re Rezulin Prods.*

*Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (internal quotation marks omitted), or be

3

permitted to merely "construct[ ] a factual narrative based upon record evidence," *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09-CV-2227 (PAC), 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015) (internal quotation marks omitted), *aff'd*, 899 F.3d 87 (2d Cir. 2018).  Relatedly, expert testimony regarding "an ultimate determination that [is] exclusively within [the jury's] province," including witness credibility, must be precluded, *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005), as must an expert's testimony "on issues of law," *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  By contrast, "other contentions that [an expert's] assumptions are unfounded go to the weight, not the admissibility, of the testimony."  *Boucher*, 73 F.3d at 21 (internal quotation marks omitted).  In the final analysis, "the traditional and appropriate means of attacking shaky but admissible evidence" are not exclusion, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  *Daubert*, 509 U.S. at 596.

## DISCUSSION

As noted, the Government seeks to exclude or otherwise limit the testimony of two of Malvasio's proposed expert witnesses, Steven S. Albert and Scott W. Carnahan, and the testimony of Marcus's sole proposed expert witness, Paul Dopp.  The Court will address the challenges to each expert in turn.

### A.  Steven S. Albert

Steven S. Albert is the President of Allstate Appraisal, a national appraisal management and valuation firm.  *See* ECF No. 187-1 ("Albert Notice"), at 3.[1]  At trial, he expects to testify as to how appraisals work, what factors may affect the values reached in appraisal, industry best

---

[1]    Citations to the expert notices discussed in this Opinion and Order are to the page number or numbers automatically generated by the Court's Electronic Case Filing system.

practices, and different methodologies used for conducting real estate appraisals. *Id.* ¶¶ 1-10. And as relevant here, his notice states that he "may also review certain appraisals that were ordered by the [Defendants]" and "assess whether the scope of work and valuation method/s [sic] used in those appraisals conformed to" industry standards and "resulted in a credible valuation conclusion." *Id.* ¶ 11. Additionally, he "may also review appraisals for some of the same properties provided to the [D]efendants by the borrowers" and "provide an opinion regarding which appraisal provides a more credible valuation and why." *Id.* ¶ 12.

The Government does not question Mr. Albert's qualifications or the relevance of his testimony. Instead, it seeks only to exclude the portion of his testimony regarding the appraisals he plans to evaluate on the ground that his notice "fails to satisfy Rule 16's disclosure requirements with respect to that topic." ECF No. 192 ("Gov't Reply"), at 1. More specifically, the Government argues that the notice does not identify "the specific appraisals Mr. Albert intends to review or the methodology he will use to analyze those appraisals." *Id.* at 2. The latter claim — that the notice fails to disclose Mr. Albert's methodology — is without merit. The notice explicitly states that Mr. Albert "will assess whether the scope of work and valuation method/s [sic] used in those appraisals conformed to [the Uniform Standards of Professional Appraisal Practice]," Albert Notice ¶ 11, which are "generally recognized ethical and performance standards for the appraisal profession," *id.* ¶ 3. That is sufficient to put the Government on notice as to the methodology Mr. Albert intends to use. In fact, the Government's own appraisal expert — Ms. Melissa Bach — has disclosed that she intends to use the same methodology. *See* ECF No. 188-1 ("Bach Notice"), ¶ 10.

The Government is on firmer ground in objecting to Mr. Albert's failure to specify the appraisal reports he intends to analyze. Indeed, Defendants themselves concede that this

5

argument is "well-taken."  ECF No. 188 ("Defs.' Mem."), at 8.  They argue that it should nevertheless be rejected because of the Government's *own* failure to disclose "which of the 400 loan applications it has identified" will be reviewed by Ms. Bach.  *Id.*  Because Mr. Albert's role, in substantial part, is to rebut the testimony of Ms. Bach, Defendants maintain, "it is not currently possible for the defense to identify a discrete set of appraisals that Mr. Albert would review" without knowing which ones Ms. Bach plans to analyze at trial.  *Id.* at 9.

That objection has some force.  Ms. Bach's notice states that she "may . . . review a subset of appraisals that were ordered by [D]efendants during the time period charged . . . , a list of which are contained in Appendix B."  Bach Notice ¶ 10.  Appendix B, in turn, contains sixty-nine documents that cover "virtually every defendant-commissioned appraisal in the discovery."  Defs.' Mem. 8.  The Government states that Ms. Bach has reviewed each of these sixty-nine appraisals, *see* Gov't Reply 3, but it does not indicate which (if any) of she intends to analyze at trial.  If that were the extent of Ms. Bach's proposed testimony, the Court would be inclined to reject Defendants' argument on the grounds that the Government has provided Mr. Albert with a list of appraisals — albeit an admittedly large one — to review.  But her proposed testimony goes further.  According to the Government's notice, she *also* intends to: (1) review some set of "additional commercial appraisals" provided by borrowers to the Defendants and "compare the Borrower Appraisals to the Defendant Appraisals"; and (2) "conduct . . . independent appraisal analysis" of some subset of the "properties that were subject of the Defendant Appraisals."  Bach Notice ¶¶ 11-12.  She does not, however, identify which, if any, of the sixty-nine appraisals in Appendix B will be subject to these additional analyses.  Without that information, it is not possible for Mr. Albert to disclose in his own notice the appraisals for which he will conduct that

6

same analysis.  Under these circumstances, exclusion of Mr. Albert's testimony for failure to comply with Rule 16 would be "too harsh a remedy." *Kwok*, 2024 WL 1773143, at *3.

Importantly, Defendants state they "would not object to supplementing [Mr. Albert's] disclosures with greater specificity regarding [his] expert opinions as to specific appraisal reports but could only do so in response to a preceding disclosure from the government." Defs.' Mem. 2.  Given the gaps in the Government's own disclosure, the Court concludes that is the appropriate course of action here.  Accordingly, and in the interests of fairness, the Court DENIES the Government's request to exclude Mr. Albert's testimony (without prejudice to renewal) and instead exercises its "broad discretion" to order both the Government *and* Defendants to supplement their Rule 16 disclosures.  *Kwok*, 2024 WL 1773143, at *1 (internal quotation marks omitted); *see also* FED R. CRIM. P. 16(d)(2)(D) (permitting the Court to issue, in response to a Rule 16 violation, an "order that is just under the circumstances").  **No later than May 20, 2026**, the Government shall supplement its disclosure to provide a list of which, if any, of the appraisals listed in Appendix B its expert plans to: (1) analyze at trial; (2) compare to borrowers' appraisals; and (3) conduct independent appraisal analysis for the properties listed therein.  **No later than May 27, 2026**, Defendants shall supplement Mr. Albert's report identifying which, if any, of the appraisals he plans to analyze and compare to the borrower appraisals.  If the Government finds the supplemental disclosure insufficient, it shall confer with Defendants and, **no later than June 1, 2026**, file a letter advising the Court and proposing next steps.

**B.  Scott W. Carnahan**

Scott W. Carnahan is a retired partner at KPMG, an accounting and consulting firm.  *See* ECF No. 187-2 ("Carnahan Notice"), at 2.  In that capacity, he has "audited and consulted on

numerous independent finance companies that originated, serviced, and sold hard[-]money loans secured by real estate." *Id.* At trial, he expects to testify as to various features and practices of the hard-money lending industry, which typically involves "loans [that] are generally shorter-term, higher interest" and are "secured by collateral that is typically real estate." *Id.* ¶ 1; *see also id.* ¶¶ 2-8, 12 (describing those features). And as relevant here, he also plans to testify regarding "loan syndication in the private lending sector," the "secondary market" for loans, and "lien positions" with respect to collateral. *See id.* ¶¶ 9-11.

The Government seeks to exclude Mr. Carnahan's testimony on the grounds that: (1) the topics identified in his notice do not require expert testimony, either because they will be familiar to jurors or because Mr. Carnahan's testimony will be cumulative of fact witness testimony; (2) his anticipated testimony regarding loan syndications, the secondary loan market, and liens is irrelevant; and (3) it should be excluded pursuant to Rule 403 of the Federal Rules of Evidence because: (a) testimony on industry practices is likely to mislead the jury; (b) testimony on why borrowers might be rejected for a loan raises a risk of impermissible "victim blaming"; and (c) the proposed testimony improperly goes to the Defendants' state of mind. *See* Gov't Mem. 10-16.[2] The Court will address each argument in turn.

The Court can and does swiftly reject the Government's argument that the topics identified in Mr. Carnahan's notice do not require expert testimony. First, to the extent that the

---

[2]    In a footnote, the Government also suggests that Mr. Carnahan is not "qualified to opine on the hard[-]money lending industry." ECF No. 187 ("Gov't Mem."), at 13 n.1. But "arguments [that] appear only in footnotes . . . are not properly raised, and the Court is under no obligation to consider them." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015). The Court declines to consider the Government's argument on that basis. In any event, the argument also fails on the merits because Mr. Carnahan has audited and consulted with companies that originate, service, and sell hard-money loans as part of his broader experience working with "finance companies which participate in commercial and consumer lending." ECF No. 187-2 ("Carnahan Notice"), at 8.

Government suggests that the terms and practices specific to the hard-money lending industry are not appropriate subjects for expert testimony, *see* Gov't Mem. 10-11, the Court disagrees. As Defendants observe, the average juror is unlikely to have heard about, or participated in, the hard-money lending industry specifically.  *See* Defs.' Mem. 10, 12-13.[3]  Second, to the extent that the Government seeks to preclude Mr. Carnahan's testimony as cumulative of fact witness testimony, its arguments are premature.  It is true a district court should not admit "expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994).  But in each of the cases cited by the Government in support of its argument, the court confirmed that exclusion of expert testimony was warranted on cumulativeness grounds only *after* the relevant fact witnesses had testified. *See* Gov't Mem. 11 (citing cases).  Here, of course, no witness has testified.  And the Government has not even identified a single witness who will testify on the topics Mr. Carnahan plans to cover.  If, after the record is developed at trial, the Government believes that Mr. Carnahan's testimony should be limited on cumulativeness grounds, it may renew its motion. But at this point, the Government's request is premature.

The Government's objections as to the relevance of Mr. Carnahan's proposed testimony regarding loan syndication, the secondary loan market, and liens are somewhat stronger. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence."  FED. R. EVID. 401(a).  Defendants insist that Mr. Carnahan's testimony regarding loan syndication and the secondary loan market is relevant because it shows that hard-

---

[3]    To some extent, the parties' dispute appears to be rooted in a disagreement about whether and to what extent hard-money lending is similar to conventional home lending.  Defendants are not required to adopt the Government's view of the matter; instead, they are entitled to present evidence and argue to the jury that there is a meaningful difference.

money lenders like them need not possess funds equal or greater to the amount they commit to fund because they can pool loans with other lenders or sell their loans to secondary market purchasers. *See* Defs.' Mem. 15-16.  Accordingly, they argue, evidence regarding that practice negates the inference that their lack of funds in this case means they acted with fraudulent intent. *See id.*  But Defendants do not suggest that *they* participated in the secondary loan market or otherwise syndicated any of the loans in question.  The fact that a lender could hypothetically loan more than he or she possessed by taking advantage of such mechanisms is not relevant to any fact in *this* case when no evidence is offered that the Defendants did so here.[4]  By contrast, Mr. Carnahan's proposed testimony regarding liens is relevant because loans in this case were apparently denied when Defendants discovered they would not hold first position. *See id*.  Accordingly, the Government's motion to exclude Mr. Carnahan's testimony is GRANTED as to loan syndication and the secondary loan market and is DENIED as to liens.

The Government's remaining objections to Mr. Carnahan's testimony, all of which are rooted in Rule 403, are without merit, substantially for the reasons set forth in Defendants' memorandum of law. *See* Defs.' Mem. 16-20.  First, contrary to the Government's assertions, testimony about industry practice is often relevant and probative in "evaluat[ing] a defendant's conduct against the standards of accepted practice." *Bilzerian*, 926 F.2d at 1295; *accord In re ACTOS Antitrust Litig.*, 783 F. Supp. 3d 749, 785-86 (S.D.N.Y. 2025).  Second, while the Government is certainly correct in arguing that evidence of victim negligence is irrelevant and

---

[4]     Even if such testimony were relevant, it would still warrant exclusion under Rule 403.  Its minimal value is substantially outweighed by the danger of misleading the jury into thinking that Defendants *did* engage in loan syndication or make sales on the secondary market, a risk that is heightened because the evidence would come from an expert. *See, e.g.*, *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (discussing "the unique weight [expert] evidence may have in a jury's deliberation").

inadmissible, *see United States v. Lesniewski*, 11-CR-1091 (VM), 2013 WL 3776235, at *2 (S.D.N.Y. July 12, 2013), *aff'd sub nom.*, *United States v. Rutigliano*, 614 F. App'x 542 (2d Cir. 2015) (summary order), and that experts may not opine on "the motive, intent, and state of mind" of others, *Rezulin Prods.*, 309 F. Supp. 2d at 545, the Court sees nothing in Mr. Carnahan's report to suggest that he will cross these lines. To the extent that any issues of these sorts arise at trial, the Court can address them through rulings on objections and appropriate curative instructions. They do not provide a reason for preclusion altogether.

In sum, the Government's motion to exclude Mr. Carnahan's testimony is GRANTED as to his proposed testimony regarding loan syndications and the secondary market in loans but is otherwise DENIED.

## C. Paul Dopp

Paul Dopp is the Senior Managing Director of GlassRatner Advisory & Capital Group, an international specialty financial advisory services firm. *See* ECF No. 187-3 ("Dopp Notice"), at 2. He has "40 years' experience in forensic and general accounting" and has "led engagements in the . . . lending sectors, including matters surrounding real estate loans . . . [and] mortgage loan fraud by borrowers and lenders, hard-money lenders, and valuations." *Id.* ¶¶ 2-3. At trial, he expects to testify about the "general requirements and underwriting processes involved in evaluating real estate loan applications," *id.* ¶ 7, as well as the various types of real estate lending, including "hard-money lending." *Id.* ¶ 8. He also plans to "assess the underwriting process and attributes" of Defendants' firm — Global Capital Partners Fund ("GCPF") — and will "review and analyze representative loan application files" of GCPF and "additional documents from these loan applications." *Id.* ¶ 12. Attached to his notice is an appendix that lists over five hundred documents that he plans to review. *See id.* at 22-28.

11

The Government seeks to exclude Mr. Dopp's testimony primarily on the grounds that: (1) his disclosures are inadequate under Rule 16; and (2) that he is not qualified to testify as an expert on this topic. *See* Gov't Mem. 17-20.[5] As to the former, the Court agrees with the Government that Mr. Dopp's disclosures are deficient, as they do not provide "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief." FED. R. CRIM. P. 16(b)(1)(C)(iii). For example, Mr. Dopp states that he "will assess the underwriting process and attributes" of GCPF. Dopp Notice ¶ 8. But he does not provide the methodology he will use to assess that underwriting process or his opinion as to its adequacy. Similarly, Mr. Dopp states that he will "review and analyze representative loan application files" and will "review additional documents from those same loan applications," *id.* ¶ 12, but he does not identify the files, does not explain what methodology he plans to use to analyze those files, and does not specify the "additional documents" he plans to review and for what purpose. Omitting that information deprives the Government of "a fair opportunity to prepare to cross-examine [him] and secure opposing expert testimony if needed." FED. R. CRIM. P. 16, Advisory Committee's Note to 2022 Amendment. His disclosure is therefore insufficient under Rule 16.

On top of that, Mr. Dopp's qualifications to opine on the underwriting process in the hard-money industry are doubtful. In general, his notice speaks to his decades of experience in "forensic and general accounting" and in "quantifying complex financial damages, investigating business disputes, conducting corporate internal investigations, performing business valuations,

---

[5]    As it did with respect to Mr. Carnahan, the Government also argues that Mr. Dopp's testimony should be excluded under Rule 403 because: (1) it will be cumulative of lay witness testimony; and (2) risks confusing the jury as to the relevance of industry practices in this case. *See* Gov't Mem. 19, 21-22. These arguments are without merit for the reasons discussed above. That said, there is a strong argument that allowing Defendants to call both Mr. Carnahan and Mr. Dopp would be cumulative. The Court will address that question at the final pretrial conference.

and consulting on financial analysis." Dopp Notice ¶¶ 2-3. But just because a witness "qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely*, 414 F.3d at 399 n.13; *see also SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 407-13 (S.D.N.Y. 2019). And there is precious little in Mr. Dopp's notice about his experience in the hard-money industry. It says only that he "led engagements in the banking, financial services, and lending sectors, including matters surrounding real estate loans . . . , [and] mortgage loan fraud by borrowers and lenders, hard-money lenders," and that, "[a]s to evaluating proposed collateral, [he] is familiar with the propriety of using the 'as is' or the 'as built' assumption in different loan contexts." Dopp Notice ¶ 3. But he provides no explanation of what the relevant "engagements" were, let alone what his role in those engagements entailed. Nor does he identify the "different loan contexts" with which he is familiar. This lack of detail calls into question Mr. Dopp's qualifications to speak to underwriting generally and underwriting in the hard-money context specifically.

Defendants face an uphill battle to overcome these defects in Mr. Dopp's notice, but the Court will grant them one opportunity to supplement Mr. Dopp's disclosure as well. **No later than May 20, 2026**, Defendants shall supplement his notice to provide a "complete statement of all opinions" and "the bases and reasons for them" and to fully explain his qualifications with respect to underwriting in the hard-money industry. FED. R. CRIM. P. 16(b)(1)(C)(iii). If the Government finds the supplemental disclosure insufficient, it shall confer with Defendants and, no later than **May 27, 2026**, file a letter advising the Court and proposing next steps.

## CONCLUSION

For the reasons stated above, the Government's motion to exclude Defendants' experts' testimony is GRANTED with respect to Mr. Carnahan's testimony regarding loan syndication

13

and the secondary loan market and is otherwise DENIED.  The parties are ORDERED to supplement their expert disclosures consistent with this Opinion and Order.

The Clerk of Court is directed to terminate ECF No. 187.


        SO ORDERED.

Dated:  May 13, 2026
        New York, New York                    _____
                                                  JESSE M. FURMAN
                                               United States District Judge

14